18 So.2d 324

**MATHENY v. MATHENY.**

No. 37216.

April 17, 1944.

Rehearing Denied May 22, 1944.

Love & Bailey, of Shreveport, for plaintiff and appellant-plaintiff and appellee.

Robert G. Chandler, of Shreveport, for defendant, appellee, appellant.

HIGGINS, Justice.

These are separate proceedings by a divorced wife and mother against her former husband and the father of her child in

which she prayed that the judgment of divorce awarding the custody of their minor son to the father be amended so as to award her the custody; and that she be granted $50 per month alimony for the support of the child and $50 per month maintenance for herself. The cases were consolidated. There was judgment in favor of the defendant in so far as the custody of the child was concerned, but judgment for the plaintiff granting her $20 per month alimony. Each party appealed from the adverse judgment but the intervenors, the maternal and paternal grandparents who sought the custody of the child, did not appeal. The plaintiff has answered the appeal asking that the alimony be increased to $50 a month. The intervenors did not answer the appeal.

The couple was married on August 28, 1937, and there was born of the union, on January 26, 1939, a son, George Wayne. Domestic difficulties arose between the parties and on February 26, 1941 the child, with the consent of both parents, was placed in the custody of the paternal grandparents by an order of the Juvenile Court of Caddo Parish. On October 22, 1941, the wife sued her husband for a divorce and alleged that she was unable to provide for her two and a half year old son and waived her right to claim the custody of the child in favor of his father, in order to assure its proper future support and education, reserving her right to visit her son at will, and to obtain his temporary custody for reasonable periods of time. No claim for alimony was made. A divorce was granted in her favor on October 28, 1941, awarding the custody of the child to the

father, but granting the mother the right to see the child regularly and to have temporary custody of him for reasonable periods of time. The boy, from the time he was a mere infant eleven months old, periodically, was left with the paternal grandparents, Mr. and Mrs. Guy Matheny, residing on Lynwood Road near Shreveport, and has been in their care and custody since being placed there by the Juvenile Judge on February 26, 1941. The father, who was awarded the custody of the child in the divorce proceedings, left the child with his parents. The mother instituted a rule for the custody of the child on March 31, 1942, and both the paternal and maternal grandparents intervened, praying that the child be given to them, respectively. The district judge sustained an exception to the jurisdiction on the ground that the child was the ward of the Juvenile Court. The plaintiff thereupon instituted proceedings in the Juvenile Court and the judge there reaffirmed his former order continuing the custody of the paternal grandparents. On June 22, 1942, on a new trial, the Juvenile Judge revoked and set aside his previous order under the authority of State v. McMillan, 191 La. 317, 185 So. 269, but stated that his opinion was unchanged that the best interest of the boy required him to remain with the paternal grandparents.

The Juvenile Court having divested itself of jurisdiction, the plaintiff, on October 10, 1942, instituted the present proceedings. The father answered the petitions, denying that the mother was entitled to the custody of the child and alimony. The paternal and maternal grandparents again intervened.

On April 8, 1943, the matter was submitted with the stipulation that the situation had not changed since the trial in the Juvenile Court; that the good character of both parents is admitted; that the father has remarried and has been deferred from the draft because of essential employment; that the mother of the boy is in training to become a nurse and expects to graduate as a trained nurse within approximately six months.

The father of the child has a salary of $220 per month and his present wife is earning $100 a month. He is paying $20 a month for the expenses of maintaining the child with his parents, who have practically raised him since he was eleven months old, he being now four years and about two months of age. The home of the paternal grandparents is conceded to be wholesome and beneficial to the child's welfare.

The mother while in training as a nurse does not receive any remuneration or salary. She earns her board, lodging, laundry, medicine and uniforms. She has to buy her own clothes, shoes, stockings, hats, coats, etc. It costs her $28 per month for the above items and incidentals without considering anything for recreation and cosmetics. She has no income from any source whatsoever and the only money she receives is the small amounts of cash which her mother gives her. At the time of the trial and for six months before then she was required to live at the nurses' home and this would have made it necessary for her to leave the child with her ailing mother and stepfather. The maternal

grandmother has remarried and she and her husband have offered to assist the plaintiff in providing a home for the child with them. They have an income of $225 per month and property valued at $5,000. It appears that the home of the maternal grandparents is a proper place in which to rear the boy.

The district judge, after a careful review of the record, concluded that present and not future conditions control his decision and that there had not been any material change in those conditions since the mother in both the Juvenile Court and the District Court agreed to surrender the custody of the child to the paternal grandparents. He pointed. out that the only practical effect of awarding the custody of the child to the mother then would have been to transfer it from the paternal grandparents' home, the only one that it has ever known, to the maternal grandparents' home, and that he did not consider it to the best interest of the boy that this be done.

Obviously, under the facts of the case, the mother is not in a position either to provide a home or personally to care for her son because she has no income and all of her time and attention is being devoted to her training as a nurse. While we are, as the district judge stated he was, impressed with the mother's serious efforts to improve her condition (for which she is to be commended) the arduous training and hard work of a student nurse make it impossible for her to give proper attention to, or to have supervision of the rearing of the child at this time. She would be compelled to turn the boy over to her mother and step-

father, as she must live at the nurses' home. She, on two occasions, considered that it was to the best interest of the child to place it with the paternal grandparents. through its father and we can give no sound reason to show that the trial judge erred in refusing to sever the ties of affection between these grandparents and their grandson, who are devoted to each other, when the mother is not in a position to give him a home and her attention or supervision at this time. She has been granted the right to see him at will and to have temporary possession of him for reasonable periods of time. There is no complaint that she has. been prevented from doing so. Clearly the trial judge did not abuse his discretion. State v. Trahan, 125 La. 312, 51 So. 216; Tate v. Tate, 169 La. 862, 126 So. 218; State ex rel., Johnson v. Ashmore, 197 La. 971, 2 So.2d 897; Pullen v. Pullen, 161 La. 721, 109 So. 400; Wheeler v. Wheeler, 186 La. 362, 172 So. 420. See also American Jurisprudence, p. 519, Divorce and Separation.

Learned counsel refer us to State ex rel. Kearney v. Steel, 121 La. 215, 46 So. 215,. 16 L.R.A.,N.S., 1004; State ex rel. Martin v. Talbot, 161 La. 192, 108 So. 411 and Higginbotham v. Lofton, 183 La. 489, 164 So. 255, to show that the mother has the paramount right to the child. While these authorities hold that a mother who voluntarily placed her child in the custody of other parties does not forfeit her right to. reclaim the custody of him, they are not apposite here because the record shows that the mother was not in a position at the time the case was tried to properly care for her son.

With reference to the claim for alimony for the divorced wife under the provisions of Article 160 of the Revised Civil Code, the facts that we have already stated show that she has not sufficient means for her maintenance. She obtained a divorce against her husband and has not remarried and, therefore, she is entitled to alimony from the earnings of her former husband. He is earning $220 per month and spends $20 per month for the boy's support. The trial judge awarded her $20 per month. She complains that this amount is not sufficient and he claims that the trial judge abused his discretion in awarding her any alimony whatsoever.

[2,3] The alimony provided for in Article 160, R.C.C., is in the nature of a pension and left largely to the discretion of the trial judge. The test is not the amount of money which it requires to support the divorced wife in the manner in which she was accustomed to live, but what sum will provide her with sufficient means for her maintenance. Player v. Player, 162 La. 229, 230, 110 So. 332; and Fortier v. Gelpi, 195 La. 449, 197 So. 138.

[4] Counsel for the defendant argue that it cannot be said that the plaintiff has not sufficient means for her maintenance because under Article 229 of the Revised Civil Code, her mother is under a superior obligation to maintain her needy daughter or descendant and that this legal and moral obligation of the mother "primes" the obligation resting upon a divorced husband under Article 160, R.C.C., to provide a pension or gratuity for his former wife. The right to sue her mother under Article 229 of the R.C.C. for support does not change the fact that at the time this case was tried she did not have sufficient means for her maintenance. It will be observed that there is nothing contained in either article which would in the slightest indicate that it was necessary for the divorced wife to exhaust her remedy against her mother under Article 229, R.C.C., before asserting her right to alimony against her divorced husband under Article 160. If this were a proceeding by a daughter in indigent circumstances against her mother for support, the mother with just as much logic might say that she should first exhaust her remedy against her divorced husband before proceeding against her. This being so, it is obvious that the plaintiff would be in the dilemma of not being able to obtain relief under either one of the articles.

[5] The fact that it is stipulated that the mother was willing to contribute to her daughter's support if necessary in no way waived the plaintiff's right to claim alimony from the defendant. The trial judge in allowing alimony herein and fixing the amount thereof took into consideration the circumstances that the mother had voluntarily from time to time financially assisted her daughter and was willing to continue to do so, if necessary.

There is nothing in the stipulation which would justify us in saying that the plaintiff's parents are willing to give her financial assistance for the purpose of entirely relieving the defendant of paying her any alimony.

[6] It is our view that the trial judge properly exercised his discretion in allowing and fixing the amount of the alimony.

He placed the costs of court on the defendant in this matter but in the custody proceeding assessed the costs against the mother. The judgment in that respect will be amended.

For the reasons assigned, the judgments of the district court are affirmed, except that defendant is to pay all costs of both courts.

ODOM, J., absent.

O'NIELL, J., takes no part.